**STATE OF NORTH CAROLINA,**
Appellee,

v.

**Reginald A. HAWKINS, Appellant.**

**No. 10062.**

United States Court of Appeals
Fourth Circuit.

Argued April 7, 1966.

Decided Aug. 16, 1966.

Melvyn Zarr, New York City (Thomas Wyche, Charles V. Bell, J. Levonne Chambers, Charlotte, N. C., Jack Greenberg, New York City, and Anthony G. Amsterdam, Washington, D. C., on brief), for appellant.

Theodore C. Brown, Jr., Deputy Atty. Gen. of North Carolina (T. W. Bruton, Atty. Gen. of North Carolina, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

PER CURIAM:

Dr. Hawkins, a dentist, was indicted by a state grand jury charged with unlawful interference with a voting registration

commissioner in the discharge of her duties and with the unlawful procurement of the registration of four un-qualified voters. He undertook to remove the prosecution to the District Court. We affirm the order of remand.

In the removal petition, it is alleged that he merely rendered requested assistance to the commissioner, that he made no representations about the qualifications of any voter, that the state's purpose was to harass and deter him, and, in conclusionary language, that he could not obtain a fair trial in North Carolina's courts. His allegations as to what transpired on the particular occasion are in contradiction of the specific charges of the indictment.

It is clear that this is not a case removable under 28 U.S.C.A. § 1443. Compare City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944; with State of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925; see Baines v. City of Danville, 384 U.S. 890, 86 S.Ct. 1915, 16 L.Ed.2d 996, affirming Baines v. City of Danville, 4 Cir., 357 F.2d 756; and Wallace v. Virginia, 384 U.S. 891, 86 S.Ct. 1916, 16 L.Ed.2d 996, affirming Commonwealth of Virginia v. Wallace, 4 Cir., 357 F.2d 105.

Affirmed.

SOBELOFF, Circuit Judge (concurring specially):

Appellant, Dr. Reginald A. Hawkins, is a Negro dentist practicing in Charlotte, North Carolina, who has engaged in civil rights activities. E. g., see Hawkins v. North Carolina Dental Society, 355 F.2d 718 (4th Cir. 1966). On September 7, 1964, he was indicted by the Grand Jury of Mecklenburg County, North Carolina, on charges of unlawfully interfering with a special voting registration commissioner, North Carolina General Statutes § 163–196(3), and unlawfully and fraudulently procuring the registration of certain persons not qualified to vote under North Carolina law, in violation of § 163–197(1) of the statute. The prosecutions were removed to the District Court for the Western District of North Carolina, pursuant to 28 U.S.C.A. §§ 1443 et seq., but that court remanded to the state court, and this appeal followed.

The removal petition recites *inter alia,* that on the night of April 8, 1964, in his capacity as president of the Mecklenburg Organization on Political Affairs, Dr. Hawkins was engaged in a voters' registration campaign to encourage Negroes in the community to register and vote in the forthcoming federal and state elections. Petitioner, and presumably others participating in the drive, visited the homes of prospective voters, determined whether they could read and write and were otherwise eligible for registration, encouraged qualified persons to register, and assisted them by providing transportation to the local high school which was used as a place of registration.

On petitioner's arrival at the place of registration, there were a large number of applicants waiting to be registered. The special registration commissioner, due to her asserted unfamiliarity with the procedure, requested Dr. Hawkins to assist in registering the prospective Negro voters. Dr. Hawkins suggested, among other things, that the oath be administered en masse rather than individually, and then the registration commissioner herself attested to the qualifications of the applicants and signed their applications. The indictments mentioned above allegedly grew out of these activities.

In State of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court authorized removal to the federal court of prosecutions against Negro defendants charged under a local trespass statute with failing to obey an order to leave a restaurant. Adhering generally to the interpretation of removal enunciated in the *Rives-Powers* line of decisions,[1] the Court nevertheless

---

1. See Commonwealth of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906); Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879); Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1879); State of Georgia v. Rachel, supra 86 S.Ct. at 1787, n. 5.

held that removal was in order if a basis could be shown for a "firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court." Id. 86 S.Ct. at 1796. That basis was found in the public accommodations section of the Civil Rights Act of 1964, which grants all persons, regardless of their race, a right to be served in places of public accommodation, and further prohibits the state from punishing or attempting to punish any person for exercising those rights. Civil Rights Act of 1964, § 203(c). 42 U.S.C.A. § 2000a–2 (1964). The Court went on to hold that:

"Hence, if as alleged in the present removal petition, the defendants were asked to leave solely for racial reasons, then the mere pendency of the prosecutions enables the federal court to make the clear prediction that the defendants will be 'denied or cannot enforce in the courts of [the] state' the right to be free of any 'attempt to punish' them for protected activity." Ibid. 86 S.Ct. at p. 1797.

Since the removal petition in *Rachel* had been remanded by the District Court to the state court without a hearing, the Supreme Court ordered the District Court to conduct a hearing to determine the truth of the petitioners' allegations that they had been ordered to leave the restaurant solely for racial reasons. If that should be the finding of the District Court, said the Supreme Court, then "it will be apparent that the conduct of the defendants is 'immunized from prosecution' in any court," and the removal petition should be allowed. Id. 86 S.Ct. at 1797.

*Rachel* cannot fairly be construed to mean that removal may be had only where the facts precisely duplicate those presented there, i. e.: where a Negro is indicted under a state criminal statute for refusing to leave the premises of a place of public accommodation. The essence of the *Rachel* decision is that the federal court is empowered to determine the narrow question whether the activi-

ties giving rise to a charge in the state courts constitute conduct protected by a federal statute that provides for equal civil rights and prohibits the state from prosecuting persons engaged in that conduct.

The court's opinion in the present case states that Dr. Hawkins' "allegations as to what transpired on the particular occasion are in contradiction of the specific charges of the indictment," and suggests that this is the ground for rejecting removal. The Supreme Court's opinion in *Rachel* makes clear, however, that conflict between the allegations in the removal petition and the criminal indictment is not ground for denying removal, provided that (1) the petition alleges facts which, if true, establish that the conduct is protected under a federal statute guaranteeing equal civil rights, and (2) there is a federal statutory prohibition against prosecution in the state courts for such conduct. Establishment of both propositions will impel the conclusion that the petitioner "is denied or cannot enforce" his rights in the state court, justifying removal.

Here, as in the *Rachel* sit-in cases, Dr. Hawkins was engaged in assisting Negroes in the exercise of equal civil rights guaranteed by a federal statute, namely the Voting Rights Act of 1964. Section 1971(b) of that statute, originally a part of the Civil Rights Act of 1957, specifically provides that:

*"No person,* whether *acting under color of law* or otherwise, *shall* intimidate, threaten, coerce, *or attempt to intimidate, threaten, or coerce* any other person for the purpose of interfering with the right of such other person to vote * * *."* 42 U.S.C.A. § 1971(b) (1964). (Emphasis added.)

If, as alleged in the removal petition, prosecution against persons assisting in a Negro voter registration drive is racially motivated, this is an "attempt to intimidate, threaten or coerce" Negroes in the exercise of their right to vote. If Georgia is forbidden to prosecute sit-ins under the public accommodations provisions of

the 1964 Act,[2] North Carolina would likewise seem to be forbidden to prosecute Dr. Hawkins for assisting in the exercise of rights under the voting provisions of the same act.[3] Section 203(c) of the public accommodations portion of the Civil Rights Act of 1964 [4]—the basis for permitting removal in *Rachel*—provides that "No person shall * * * (c) *punish or attempt to punish* any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000–1 [equal access to public accommodations]." [5] (Emphasis added.) Section 1971(b) of the voting rights provisions employs a more general prohibition against *any* attempted intimidation, threats, or coercion by persons "acting under color of law or otherwise." [6] Literal comparison of the two provisions suggests that § 1971(b) is a more, not less, sweeping prohibition of official acts of harassment against equal civil rights than the limited proscription of § 203(c), since "attempts to punish" are only one means of coercing, threatening, or intimidating.[7]

However, in Peacock v. City of Greenwood, 384 U.S. 808, 86 S.Ct. 1800, 16 L. Ed.2d 944 (1966), where the voting rights provisions of § 1971 were invoked in support of a removal claim, the Supreme Court held that "no federal law confers immunity from state prosecution[s]" growing out of attempts to secure the right to vote. Since § 1971 did not contain the specific prohibition against state action that "punish[es] or attempts to punish"

---

2. Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1965).

3. It is immaterial that Dr. Hawkins himself was not seeking to register; it is enough that he was assisting other Negroes to do so. If the law's protection cannot be invoked by the more intelligent and better-educated Negro who furnishes *leadership and guidance to others* of his race, the purpose of the Voting Rights Act will be severely impaired.

   Negroes' rights are as effectively frustrated by prosecutions arising out of the attempt to exercise voting rights as by prosecutions growing out of the assertion of the right to equal accommodations. The use of the criminal process for the purpose of intimidation, I submit, would logically be proscribed in both cases.

4. 42 U.S.C.A. § 2000a–2 (1964).

5. Section 201 provides in its entirety:
   "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 201 or 202, or
   (b) *intimidate, threaten, or coerce* * * * any person with the purpose of interfering with any right or privilege secured by section 201 or 202, or
   (c) *punish or attempt to punish* any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202." 42 U.S.C.A. § 2000a–2 (1964). (Emphasis added.)

6. "No person, *whether acting under color of law or otherwise*, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote * * *." 42 U.S.C.A. § 1971(b) (1964). (Emphasis added.)

7. Section 203(b) prohibits acts of intimidation, threats, and coercion, but does not contain the key words "acting under color of authority of law" which are found in the comparable provision of § 1971. § 203(c) cures this omission by specifying that no one shall "punish or attempt to punish" any person for exercising or attempting to exercise his rights. Having eliminated acts of state officials from part (b) of § 203, they are thus in effect restored by paragraph (c).

   In other words, § 1971(b) of the voting rights provisions seems to express in different language the principle contained in § 203(c) of the public accommodations clauses—that the states, acting through state officials are forbidden to employ any form of attempted intimidation, coercion, or threats, including "attempts to punish." Thus, § 1971(b) performs the same function as § 203(c), and suggests that the two clauses should be given the same effect. In this view the Supreme Court's interpretation of § 203(c) in Hamm v. City of Rock Hill, supra, 379 U.S. 306, 85 S.Ct. 384 (1965), would apply with equal force to the prohibitions of § 1971(b). It *is difficult to conceive* that Congress intended to place voting rights guarantees on a lower plane of protection than the right to equal public accommodations.

present in *Rachel* the Court distinguished voting rights cases from public accommodations cases, and refused to permit removal. Under this interpretation of § 1971(b), which is binding upon me, I agree that the present case must be held not entitled to removal.

On that ground I concur in today's per curiam opinion, and not on the ground therein stated, that the allegations of the petitioner are "in contradiction of the specific charges of the indictment." The test of removability is the content of the petition, not the characterization given the conduct in question by the prosecutor.