The PEOPLE OF the STATE OF NEW YORK, Respondent-Appellee,

v.

James HORELICK and Sandra Adickes, Petitioners-Appellants.

No. 524, Docket 34140.

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1970.

Decided Feb. 27, 1970.

Certiorari Denied June 1, 1970.
See 90 S.Ct. 1839.

Eleanor Jackson Piel, New York City, for petitioners-appellants.

Lewis R. Friedman, Asst. Dist. Atty. (Frank S. Hogan, Dist. Atty., New York County, Michael R. Juviler and Alfred Tallakson, Asst. Dist. Atty's, of Counsel), for respondent-appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

On this appeal from an order of remand by the District Court for the Southern District of New York, we again have the task of interpreting the civil rights removal statute, 28 U.S.C. § 1443, in light of the Supreme Court's decisions in Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), upholding removal, and City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), denying it.[1] This case plainly falls on the *Peacock* side.

Petitioners sought removal of five prosecutions in the Criminal Court of the City of New York. Four related to incidents occurring about 12:45 P.M.

---

[1] Recognizing the difficulties in applying this venerable but Delphically worded statute but finding it hard to come up with anything better, the American Law Institute has proposed that Congress leave the statute as is, except for repealing the first clause of § 1443(2), which is superfluous, see Peacock, supra, 384 U.S. at 824, 86 S.Ct. 1800, and that federal courts should rely rather on a more liberal use of the injunction in appropriate instances, ALI, Study of the Division of Jurisdiction between State and Federal Courts, 27, 203–06 (1969).

on October 17, 1968, at Washington Irving High School in the course of a prolonged teachers' strike. One complaint charged James M. Horelick with criminal trespass, N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 140.10, and resisting arrest, N.Y. Penal Law, § 205.30. An affidavit of the school's custodian engineer alleged that Horelick entered without permission or authority and refused to leave on the custodian's demand; it averred also that a patrolman had informed the custodian that Horelick had kicked and wrestled with him in resisting arrest. The other two complaints charged Sandra Adickes with resisting arrest and harassment, N.Y. Penal Law § 240.25; the same patrolman averred that she had "attempted to prevent him from effecting an authorized arrest of another person," to wit, Horelick. A fifth complaint charged Horelick with trespass at the same school on October 20.

After an unsuccessful attempt to have the district court enjoin the state criminal trial because of alleged unconstitutionality of the State's penal statutes as sought to be applied, the petitioners on the morning of September 30, 1969, the day set for trial, served a petition for removal.[2] The petition alleged that Horelick and Adickes were teachers employed by the New York City Board of Education; that the strike had been called by the United Federation of Teachers in an effort to block a community plan designed to change and remedy the deleterious effects of *de facto* segregated education upon black and Puerto Rican school children; and that petitioners did not support the strike and wished to carry on their regular duties. It further alleged that high officers of the Board of Education had authorized designated teachers to open certain schools and conduct classes; that Edward Williams, chairman of the mathematics department, had received a permit to be "Teacher-in-Charge" of Washington Irving High School for this purpose; that the police nevertheless barred entry of Williams, petitioners and other teachers; that Horelick, under authority delegated by Williams, entered the school but that members of the police department commenced beating him and led him from the building in a battered condition; that the policemen pushed Adickes along with Horelick into an automobile; and that they were driven to the precinct station where charges were filed. Removal was predicated on both subdivisions of § 1443.[3] In response to a motion for remand, which did not challenge the factual allegations of the removal petition, defendants submitted affidavits enlarging on their claims with respect to the antagonism of many of the teachers to black and Puerto Rican students and to plans for greater decentralization of control of the

---

2. Although 28 U.S.C. § 1446(c) permits the filing of a petition to remove a criminal prosecution "at any time before trial," and petitioners' delay here may have been excusable in light of the continuing effort to obtain an injunction, defendants desiring to remove criminal cases should realize that unwarranted delay in seeking removal may well have an unfavorable effect on determinations about which a federal court has discretion, e. g., the staying of a state trial pending appeal from an order of remand. The obvious purpose for permitting a petition for removal to be filed at any time up to the beginning of the state criminal trial was to deal with cases where the trial followed swiftly after the charge, not to afford a means for harassment of state judges and prosecutors and trial delay.

3. 28 U.S.C. § 1443 provides:
   Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
   (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
   (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

school system, the inferior quality of education at schools with a high percentage of such students, and the motivations of the United Federation of Teachers. Judge Ryan ordered a remand without conducting an evidentiary hearing, and this appeal followed, 28 U.S.C. § 1447(d).

Petitioners' arguments concerning subdivision (1) rest on a claim that various federal statutes, notably § 101(a) of the Civil Rights Act of 1968, 18 U.S.C. § 245(b), put them in a position analogous to the defendants in *Rachel*. We think it desirable in the first instance to recapitulate the salient aspects of the Supreme Court's *Rachel* and *Peacock* decisions and then to review subsequent developments in the courts of appeals.

After a comprehensive analysis of the history of the civil rights removal statute and the opinions construing it, Mr. Justice Stewart concluded in *Rachel* that decisions up to that time had established that, in order to come within what is now § 1443(1), a petitioner must show that a denial or inability to enforce "a right under any law providing for the equal civil rights of citizens of the United States" in the courts of a state "be manifest in a formal expression of state law," 384 U.S. at 803–804, 86 S.Ct. at 1796. Quoting the statement in Virginia v. Rives, 100 U.S. 313, 319, 25 L. Ed. 667 (1880), that the denial of which the removal statute speaks "is primarily, if not exclusively, a denial * * * resulting from the Constitution or laws of the State * * *," the Court held that removal under § 1443(1) would be justified "if an equivalent basis could be shown for an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court." It found such a basis through the following reasoning: Section 201 of the Civil Rights Act of 1964, enacted after the attempted removal, entitles all persons to be served without discrimination in restaurants open to the general public. Defendants, who had been in such a restaurant, were being prosecuted under a Georgia statute making it a misdemeanor to refuse to leave the premises when ordered to do so by the "owner or person in charge." Section 203(c) of the Civil Rights Act prohibits any "attempt to punish" persons for exercising the rights of equality so conferred. This had been interpreted in Hamm v. City of Rock Hill, 379 U.S. 306, 311, 85 S.Ct. 384, 13 L. Ed.2d 300 (1964), to prohibit not merely conviction but prosecution. Hence, if defendants could substantiate the allegations in the removal petition that they had been asked to leave for racial reasons, prosecution in the state courts would itself "deny" a right conferred by Title II of the 1964 Civil Rights Act.

In *Peacock* the Court reached a different conclusion. Members of a group engaged in a drive to encourage Negro voter registration in Mississippi were charged in the state courts with various offenses—obstructing public streets, assault, interfering with an officer in the performance of his duties, creating a disturbance in a public place, inciting to riot, parading without a permit, contributing to the delinquency of a minor, operating a motor vehicle with improper license tags, reckless driving, and profanity and the use of vulgar language. The removal petitions alleged that these prosecutions were racially motivated. Section 11(b) of the Voting Rights Act of 1965, 42 U.S.C. § 1973i(b), enacted after the prosecutions were begun but before the cases were decided by the Supreme Court, prohibited any person from intimidating, threatening or coercing, or attempting to intimidate, threaten or coerce, another for urging or aiding any person to vote. Despite this and other federal statutes, the Court held the case to be governed by its previous line of decisions against removal culminating in Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906), rather than by *Rachel*. The case was said to differ from *Rachel* "in two significant respects," 384 U.S. at 826–827, 86 S.Ct. at 1812. "First, no federal law confers an absolute right on private citizens" to

do the acts with which defendants were charged. "Second, no federal law confers immunity from state prosecution on such charges."

The *Rachel* principle has been held to allow removal in cases where persons who claimed to be exercising their rights to equal *accommodation* were prosecuted on what allegedly were trumped up charges of burglary, Wyche v. Louisiana, 394 F.2d 927 (5 Cir.1967), and vagrancy, Achtenberg v. Mississippi, 393 F.2d 468 (5 Cir.1968), rather than of trespass. The Fifth Circuit has also come to the logical conclusion that when a hearing on a removal petition shows that the prosecution was an attempt to punish the exercise of rights conferred by Title II of the 1964 Civil Rights Act, the proper course for the district court is to dismiss the indictment with prejudice, Walker v. Georgia, 417 F.2d 1 (1969); Walker & Forman v. Georgia, 417 F.2d 5 (1969). In contrast the same court has held against removal of a prosecution for marching in protest against the arrest of blacks who had unsuccessfully sought service in a restaurant, Orange v. Alabama, 386 F.2d 829 (1967).

More difficulty has been encountered in applying the *Rachel-Peacock* distinction to state prosecutions alleged to impinge on federal civil rights statutes other than the public accommodations act. The first to be considered were the voting rights acts of 1957 and 1965. The earlier statute began with a statement that all citizens shall be entitled to vote without distinction of race, color of previous condition of servitude, 42 U.S.C. § 1971(a) (1), and then prohibited any person from intimidating, threatening or coercing any other person for the purpose of interfering with his voting rights, 42 U.S.C. § 1971(b). The later statute, which we have already noted in our discussion in *Peacock*, prohibited any person from intimidating, threatening or coercing any other person for urging or aiding any person to vote, 42 U.S.C. § 1973i(b). In North Carolina v. Hawkins, 365 F.2d 559 (per

curiam), cert. denied, 385 U.S. 949, 87 S.Ct. 322, 17 L.Ed.2d 227 (1966), the Fourth Circuit denied a removal petition based on § 1971(b). Judge Sobeloff in a separate opinion expressed difficulty in distinguishing *Rachel*. In his view, if the "attempt to punish" language in § 203(c) of the 1964 Civil Rights Act, involved in *Rachel*, forbade prosecution itself, the prohibition in § 1971(b) against attempts to intimidate seemed to do likewise when improper motivation existed. He felt constrained to concur, however, because the Court in *Peacock* "distinguished voting rights cases from public accommodations cases" and "[u]nder this interpretation of § 1971 * * * the present case must be held not entitled to removal." *Id.* 365 F.2d at 562–563. The Fifth Circuit's opinions in Whatley v. City of Vidalia, 399 F.2d 521 (1968), and Davis v. Alabama, 399 F.2d 527 (1968), tracked much of Judge Sobeloff's reasoning but made a significant departure. By distinguishing *Peacock* on the basis that 42 U.S.C. § 1973i(b) had not been enacted and thus not invoked at the time of the attempted removal in that case, the court thought there was no bar to finding the "intimidating" language broad enough to inhibit racially motivated prosecutions for asserting or aiding others to assert equal voting rights. With the way thus cleared, *Rachel* was held applicable to prosecutions alleged to have the purpose of intimidation under the voting rights acts although in them Congress did not prohibit punishing or attempting to punish.

In New York v. Davis, 411 F.2d 750 (1969), we were concerned with still another recent civil rights statute, the Fair Housing Act of 1968. Section 804, 42 U.S.C. § 3604, prohibited discrimination in the sale or rental of dwellings because of race, color or national origin, and § 817, 42 U.S.C. § 3617, made it unlawful to "coerce, intimidate, threaten, or interfere with" any person in the exercise of such rights. We held that the district court properly remanded a prosecution for menacing a city official

whom Davis encountered on the street without conducting a hearing on Davis' claim that the prosecution was baseless and intended to intimidate him from exercising his rights under the Fair Housing Act. We drew the distinction that the incident did not arise directly from Davis' exercise of his federally secured right and hypothesized that removal might be allowable if he were being prosecuted on racial grounds for the very fact of living in his apartment.

■ With this background we approach petitioners' case. As indicated, the argument for removal is founded on the Civil Rights Act of 1968, 82 Stat. 73, which added to Title 18 of the United States Code § 245, entitled "Federally Protected Activities." Unlike the statutes on public accommodations, voting rights and fair housing which we have reviewed, the 1968 Act does not in terms confer substantive rights; it is solely a criminal statute permitting federal prosecution for interference with a long list of activities. Subdivision (b) says that "Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with" five broad categories of persons, several divided into subcategories, shall be subject to fine or imprisonment as there described. At least two of the categories, (1) and (3), taken by themselves, would not seem to fit the definition of "equal civil rights" in *Rachel,* to wit, "any law providing for specific civil rights states in terms of racial equality." 384 U.S. at 792, 86 S. Ct. at 1790. The strongest argument for petitioners is that they were persons within § 245(b) (4) (B) who were affording another person or class of persons opportunity to participate without discrimination on account of race, color, religion or national origin in various "benefits or activities" described in subparagraph (1) (E), to wit, a "program or activity receiving Federal financial assistance," see 20 U.S.C. § 821 *et seq.;* in subparagraph (2) (A), to wit, attending a public school; and in subparagraph (2) (B), to wit, "participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof."

■ Mere statement suffices to show that § 1443(1) affords no basis for removal by Miss Adickes. Resisting arrest and harassing police outside school premises are not acts affording black and Puerto Rican pupils of a closed school any "opportunity or protection" in attendance. Cf. Orange v. Alabama, *supra,* 386 F.2d 829.

■ We reach the same result with respect to Horelick. While the federal statutes he invokes arguably provide for "equal civil rights," though stated only in terms of federal criminal penalties for their violation, we need not decide this. Neither must we choose between the position reluctantly reached by Judge Soberoff in North Carolina v. Hawkins, *supra,* and that of the Fifth Circuit in Whatley v. City of Vidalia, *supra,* and Davis v. Alabama, *supra,* on the question whether a prohibition against "intimidation," as contrasted with one against an "attempt to punish," can bring a case within *Rachel.*[4] For it is clear that the statute relied upon by

---

4. As a result of further study of the *Peacock* opinion, we are not so sure as a year ago, New York v. Davis, *supra,* 411 F.2d at 754, n. 3, that civil rights statutes that ban intimidating, threatening or coercing are to be equated, for purposes of removal under § 1443(1), with a statute that prohibits punishing or attempting to punish, language that reads directly on the state. As already noted, one of the two significant points of distinction taken in *Peacock* was that "no federal law confers immunity from state prosecution on such charges," 384 U.S. at 827, 86 S.Ct. at 1812. Justice Stewart annotated this with a reference to the provision in § 203 (c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–2(c), that no person shall "punish or attempt to punish any person" for exercising rights to public accommodations, a statement that "none of the federal statutes invoked by the defendants in the present case contains any such provision," and a cross-reference to

Horelick—18 U.S.C. § 245(b)—to show that he will be denied a right in the New York state court cannot be read to prevent state prosecution. Unlike the voting rights acts, § 245(b) is aimed only at intimidation "by force or threat of force,"[5] and that denotes violent activity, not the ordered functioning of state legal processes, whatever the motivation. See also § 245(a) and (c). Since Horelick's assertion that prosecution itself would deny him equal civil rights is his sole basis for predicting a denial of such rights in the state court, his petition for removal under § 1443(1) must be denied.

All that remains for consideration is the contention that the prosecutions are "for refusing to do any act on the ground that it would be inconsistent with" a federal law providing for equal rights and are thus removable under § 1443(2). But petitioners have not pointed to any federal equal rights law with which a teacher's submission to arrest or departure from school premises on request would be inconsistent. Apart from the language of the statute, our knowledge of the purpose of this clause is limited to the remarks of Representative Wilson, floor manager of the Civil

Rights Act of 1866, quoted in *Peacock*, 384 U.S. at 824, 86 S.Ct. at 1810 n. 22, "I will state that the amendment is intended to enable State officers, who shall refuse to enforce State laws discriminating in reference to [the rights created by § 1 of the bill] on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to enforce those laws." Cong. Globe, 39th Cong., 1st Sess., 1367. Petitioners are not being prosecuted for refusing to enforce any law of the State or ordinance of the City of New York discriminating against school children on account of race or color, as in the case, admittedly unlikely today, where a teacher was being prosecuted for having admitted black children to a school in which racial segregation was required by state law.[6] In contrast petitioners are being prosecuted for acting on the basis that the school was open by order of the Board of Education whereas the custodian and the police said it was closed, and refusing to submit to arrest. We said in New York v. Galamison, 342 F.2d 255, 266, 8 A.L.R. 3d 263 (2 Cir.), cert. denied, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272, (1967), "submission to the orders of law

notes 3 and 7. Note 3 referred to the provisions of the Voting Rights Acts of 1957 and 1965 described in the text, with a "See also" citation to the latter. Commentators apparently believe, although with regret, that the Court meant to confine the *Rachel* basis for removal to "unique" statutes, see 384 U.S. at 826, 86 S.Ct. 1800, which in terms prohibit prosecution. Note, The Supreme Court, 1965 Term, 80 Harv.L.Rev. 91, 230–31 (1966); Note, 41 Tulane L.Rev. 168, 181–82 (1966). On the other hand, it is arguable that citation in a footnote would be a rather elliptical way to decide such an important question, and that the limitation of removal to statutes using the words "punish or attempt to punish" is confined to cases like *Peacock* where the conduct was not within the protection of a federal civil rights act when it occurred. We leave the question open.

5. Penalties for violating § 245(b) are graduated according to the degree of harm: for intimidating or coercing by threat of force, a fine of $1000 and/or imprison-

ment for not more than one year; by inflicting bodily injury, $10,000 and 10 years; for causing death, imprisonment for any term of years or for life.

In describing the purposes of the Act the Senate Committee Report used the terms "violence" or "racial violence" as equivalent to "force or threat of force" and stated that "The purpose of the legislation is to strengthen the capability of the Federal Government to meet the problem of violent interference, for racial or other discriminatory reasons, with a person's free exercise of civil rights." S.Rep. No.721, 90th Cong., 2d Sess. (1968); 1968 U.S. Code Cong. & Admin.News, pp. 1837, 1938.

6. Compare O'Keefe v. New York City Board of Elections, 246 F.Supp. 978 (S.D.N.Y.1965), allowing removal under the second clause of § 1443(2) when a New York voter sued state election officials in state court to enjoin them from complying with § 4(e) of the Voting Rights Act.

**704**

officers to desist from conduct forbidden by general state penal laws is not 'inconsistent' with the equal protection clause or [42 U.S.C.] § 1981 simply because the conduct was a protest over lack of equal protection; neither the constitutional provision nor the statute directs anyone to resist." The same is true of 18 U.S.C. § 245.

Affirmed.