Lee HILL, Appellant in No. 18992, Johnny Clark, Floyd Norfleet, Norman Wilson, Thomas Kelly

v.

COMMONWEALTH OF PENN-SYLVANIA.

Appeal of Johnny CLARK in No. 18993.
Appeal of Floyd NORFLEET in No. 18994.

Appeal of Norman WILSON in No. 18995.

Appeal of Thomas KELLY in No. 18996.

COMMONWEALTH OF PENN-SYLVANIA

v.

Paul LEONARD, Appellant in No. 19215, Lawrence Y. Lingard, Jerry B. Williams, Frederick T. Wims, Francis Rolls, Thomas E. Bell.

Appeal of Lawrence Y. LINGARD, in No. 19216.

Appeal of Jerry B. WILLIAMS, in No. 19217.

Appeal of Frederick T. WIMS, in No. 19218.

Appeal of Francis ROLLS, in No. 19219.
Appeal of Thomas E. BELL, in No. 19220.

COMMONWEALTH OF PENN-SYLVANIA

v.

Edward RAY, Appellant in No. 19244.

COMMONWEALTH OF PENN-SYLVANIA

v.

Martin FRANCKEN, Appellant in No. 19304, Arnold Walker, Alvin Rue, Alvin G. Bailey, Robert Williams, Charles A. Burnett.

Appeal of Arnold WALKER, in No. 19305.

Appeal of Alvin RUE, in No. 19306.

Appeal of Alvin G. BAILEY, in No. 19307.

Appeal of Robert WILLIAMS, in No. 19308.

Appeal of Charles A. BURNETT, in No. 19309.

Nos. 18992–18996, 19215–19220, 19244 and 19304–19309.

United States Court of Appeals, Third Circuit.

Argued Jan. 15, 1971.

Decided March 18, 1971.

Harry F. Swanger, Pittsburgh, Pa., for appellants.

J. Kent Cully, Asst. Dist. Atty., Pittsburgh, Pa. (Robert W. Duggan, Dist. Atty., Allegheny County, Carol Mary Los, Robert L. Campbell, Asst. Dist. Attys., Pittsburgh, Pa., on the brief) for appellee.

Before SEITZ, and VAN DUSEN, Circuit Judges, and MASTERSON, District Judge.

OPINION OF THE COURT

SEITZ, Circuit Judge.

These consolidated appeals challenge orders of the district court granting the Commonwealth's motions to remand to the Court of Common Pleas of Allegheny County, Pennsylvania, state criminal prosecutions against petitioners which were previously removed to the district court pursuant to 28 U.S.C. § 1443(1).

We are thus presented with the delicate problem of determining whether petitioners' allegations, if proved, bring them within the ambit of legal principles which entitle them to have the charges determined in the first instance in a federal rather than a state court.

In No. 19244, petitioner was charged under Pennsylvania law with aggravated assault and battery, assault and battery, participation in an unlawful assembly, and inciting to riot. In the remaining cases, petitioners were charged only with inciting to riot. All of these charges arose out of petitioners' actions during public demonstrations on August 26, 1969 in support of an attempt by the Black Construction Coalition to secure equal employment opportunities in the construction industry in the City of Pittsburgh.

For purposes of this appeal, the allegations in the various petitions for removal may be considered as identical. Petitioners allege that they were lawfully and peaceably engaged in activities for the purpose of enforcing federally protected equal civil rights, that the sole purpose of their arrests was to deny them these rights, and that they have been denied or cannot enforce federally protected equal civil rights in the state courts of Pennsylvania.

Specifically, petitioners claim that pursuant to 28 U.S.C. § 1443(1) they must be afforded the protection of a federal forum in order to secure their rights guaranteed by 42 U.S.C. §§ 1981,[1] 1983, 2000d, 2000e–2(a), (c) & (d), and 18 U.S.C. § 245(b).[2] They assert that this protection is necessary since we should be able to clearly predict that these rights will be denied in the state courts of Pennsylvania. They reason that we should be able to make this prediction since the mere pendency of the prosecutions denies them a federal right under 18 U.S.C. § 245(b), which they claim immunizes them from prosecution for the activities they were engaged in, and further, they will be denied their rights under 42 U.S.C. § 1981 since, according to Pennsylvania law, they will be tried before a jury which will be selected pursuant to 17 P.S. § 1276 which they claim is an unconstitutional statute.[3]

1. "All persons within the jurisdiction of the United States shall have the same right in every state * * * to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. * * *"

2. In pertinent part this statute provides criminal penalties for:
"(b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—
* * * * * *
"(5) any citizen because he is or has been, or in order to intimidate such citizen or any other citizen from lawfully aiding or encouraging other persons to participate, without discrimination on account of race, color, religion or national origin, in any of the benefits or activities described in subparagraphs (1) (A) through (1) (E) or subparagraphs (2) (A) through (2) (F), or participating lawfully in speech or peaceful assembly opposing any denial of the opportunity to so participate—.
* * *"
Subparagraph (2) (C) protects one who is "applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency. * * *"

3. The district court correctly held that petitioners' reliance on 42 U.S.C. §§ 2000d and 2000e–2(a), (c) & (d) was misplaced for they did not allege that at the time of their arrests they were seeking employment or participating in a training or apprenticeship program. On the contrary, they alleged that they were encouraging others to enforce such rights. These statutes do not protect such encouraging activities. Nor does 42 U.S.C. § 1983 suffice to satisfy this requirement for petitioners did not claim that they were seeking civil redress for a deprivation of their civil rights in the pending state proceedings.

After a review of the relevant state records and argument upon upon the legal sufficiency of the petitions for removal, the district court held that petitioners were not entitled to removal under any state of facts which could be proved in support of their claims. The court reasoned that since the petitioners were charged with conduct which was not protected by federal law, and since the challenged jury selection statute did not, on its face, discriminate in terms of race, petitioners did not allege a proper basis for removal.

 28 U.S.C. § 1443(1) permits removal to the federal district court of criminal prosecutions commenced in a state court:

"[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof."

To justify removal under this section, petitioners must demonstrate that (1) they rely upon a specific civil right stated in terms of racial equality, and (2) a clear prediction can be made that the right relied upon will be denied or not be enforceable in the state court. Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

Petitioners meet the first requirement by their reliance on 42 U.S.C. § 1981 and 18 U.S.C. § 245(b), both of which specify civil rights stated in terms of racial equality.

In claimed fulfillment of the second requirement, petitioners assert that 18 U.S.C. § 245(b) in effect immunizes them from prosecution for their activities. Petitioners concede that there is no statute which specifically immunizes them from prosecution. They argue instead that since Congress made it a crime to interfere with those who attempt to assert their rights under Section 245(b) it follows that one who attempts to secure these rights is immune from prosecution for acts within the attempt. Petitioners assert that any other view of the statute would present an anomaly, for Congress would be deemed to have made it a crime to stop a criminal from acting. Petitioners argue that since they are immune from prosecution, any proceeding in the state court will necessarily deny them their rights protected by this immunity. They conclude that the second requirement for removal is met and they should therefore be permitted to remove the state criminal prosecutions to federal court where an evidentiary hearing should be conducted to determine whether they were acting lawfully and whether their arrests and prosecutions were means used to deny them their rights under Section 245(b). Our analysis commences with an examination of the Supreme Court precedents.

In Georgia v. Rachel, *supra*, petitioners sought to remove state trespass prosecutions arising out of their attempts to seek service at restaurants open to the public. The statute under which they were indicted made it a crime to refuse to leave premises of another when requested to do so. Petitioners alleged that they refused to leave public accommodations when, solely for racial reasons, they were ordered to do so; therefore, they would be brought to trial solely as a result of peaceful attempts to exercise their federal rights of equal access to service at places of public accommodation. The first requirement for removal was satisfied by 42 U.S.C. § 2000a(a), which granted petitioners the equal access they sought.

In finding the second requirement for removal satisfied, the Court held that it was not necessary to establish that a denial of equal civil rights would stem from a legislative enactment or constitutional provision of the state. It was deemed sufficient if an equivalent basis could be shown for an equally firm prediction that the petitioners would be denied equal civil rights in the state courts. The Court was able to make the

required prediction since 42 U.S.C. § 2000a–2 prohibited attempts to punish any person for attempts to exercise rights of equal access to service at public accommodations granted by 42 U.S.C. § 2000a(a). Two years previously, in Hamm v. City of Rock Hill, 279 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964), the Court had held that 42 U.S. C. § 2000a–2 prohibits prosecution of any person seeking service in a covered establishment because of his race or color. Hence, in *Rachel*, if the allegations in the removal petition were true, petitioners were immune from trespass prosecutions since they had a right not to be brought to trial because of their alleged activities. In the narrow circumstances of that case, any proceeding in the state court would deny the explicit right to be free from attempted punishment. The Court ordered that the district court was to determine in an evidentiary hearing whether petitioners were ordered to leave the restaurant solely for racial reasons and, if that were so, that the removal be sustained and the prosecutions dismissed.

For reasons we shall develop, we think the instant case is not governed by the principles of *Rachel*; rather, in our view it is controlled by City of Greenwood, Miss. v. Peacock, *supra*. In *Peacock*, petitioners were charged with, among other things, inciting to riot, disturbing the peace, and obstructing public streets. Petitioners alleged in their removal petitions that they were engaged in a drive to encourage Negro voter registration at the time of their arrests. Petitioners claimed that they were denied or could not enforce in a state court their rights under 42 U.S.C.

§ 1971 et seq., which guarantee the right to vote free from discrimination and provide that no person shall attempt to intimidate, threaten or coerce another in order to interfere with this right. The Court denied removal and stated that the basic differences between the case before it and *Rachel* were that in *Rachel* petitioners (1) relied on a specific federal right that permitted them to remain on the property although such conduct violated state law, and (2) further relied on a federal right that prohibited a state from attempting to prosecute petitioners for their conduct. In *Peacock* no federal law conferred an absolute right upon petitioners to, for example, obstruct the streets and no federal law conferred immunity from prosecution on such charges.

The *Peacock* Court pointed out that in *Rachel* the statute relied upon explicitly provided that no person shall punish or attempt to punish any person for exercising the right claimed by engaging in the activities alleged. In contrast, the statutes relied upon by petitioners in *Peacock* provided that no person shall intimidate or attempt to intimidate another in order to interfere with his right to vote.[4] In this context, after a "See also" signal, the *Peacock* Court referred to 42 U.S.C. § 1973i(b), enacted subsequent to the initiation of the state prosecution sought to be removed, which provides that no person shall intimidate or attempt to intimidate another for urging or aiding any person to vote. This statute arguably would have protected the petitioners' actions. There is some question whether the Court considered petitioners' alleged activities of encouraging others to vote in the context

---

4. It is Judge Sobeloff's view that statutes forbidding "attempts to intimidate" are more sweeping prohibitions of official acts of harassment than statutes proscribing "attempts to punish" since attempts to punish are only one means of intimidation. However, his interpretation of *Rachel* and *Peacock* is that a specific prohibition against state action which "attempts to punish" is necessary to confer immunity from prosecution. North Carolina v. Hawkins, 365 F.2d 559, 562–563 (4th Cir.

1966) (concurring opinion). The Fifth Circuit shares Judge Sobeloff's view concerning the implications of the words "punish" and "intimidate" but its interpretation of *Rachel* and *Peacock* does not preclude an application of this view. Whatley v. City of Vidalia, 399 F.2d 521, 525–526 (5th Cir. 1968). The Second Circuit has left the question open. New York v. Horelick, 424 F.2d 697, 702, n. 4 (2d Cir. 1970).

of Section 1973i(b),[5] but we believe that this would not have changed the outcome of the case. We say this because even if one considers Section 1973i(b), the situation in *Peacock* would have still lacked the distinguishing feature of *Rachel*, the statutory substitution of a right for a crime.

■ The statutes relied upon in *Rachel* necessarily displaced any state laws which would proscribe the act of remaining in public accommodations when asked to leave on account of race by prohibiting attempted punishment for this act. However, when statutes, such as those relied upon in *Peacock*, grant one a right not to be intimidated for efforts to accomplish a particular goal or while asserting a specific right, we cannot ascribe to Congress an intent to displace state laws which regulate one's conduct while attempting to exercise the right unless, of course, the federal right permits specific acts which are proscribed by state law, or the state law, in effect, forecloses a reasonable possibility of engaging in acts necessary to assert the federal right. Without a displacement of state law we do not have a situation in which a federal right is substituted for a state crime; therefore the mere pendency of a prosecution based on state criminal laws does not provide the necessary basis to firmly predict that a federal right would be denied in state court.

The Court in *Peacock* recognized that a right not to be intimidated while seeking to accomplish a goal could be frustrated by specious arrests and subsequent criminal prosecutions. However, the Court held that such possibilities, similar to those here alleged, would not provide a basis to predict that the claimed right would inevitably be denied in a state court:

"It is *not* enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any manner the defendant will be 'denied or cannot enforce in the courts' of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." 384 U.S. at 827–828, 86 S. Ct. at 1812.

■ Section 245(b), which petitioners rely upon in the instant case, explicitly indicates that Congress did not intend to displace the state laws under which the petitioners were charged. By its own terms the statute provides:

"[a]s used in this section, the term 'participating lawfully in speech or peaceful assembly' shall not mean the aiding, abetting, or inciting of other persons to riot or to commit any act of physical violence upon any individual or against any real or personal property in furtherance of a riot."[6]

It is true that Section 245(b) makes it a crime to intimidate anyone, by force or threat of force, while he is lawfully encouraging others to seek equal employment. The petitioners therefore assert that it would be anomalous if they are not thereby immune from prosecution for their "encouraging" activities, for otherwise we would have a situation in which it is a crime to stop a criminal from acting. This anomaly, however, is more apparent than real for it assumes

---

5. Compare New York v. Davis, 411 F.2d 750, 754, n. 3 (2d Cir. 1969) with New York v. Horelick, *supra*, at 702 n. 4 and Whatley v. City of Vidalia, *supra*, at 525–526.

6. See also 18 U.S.C. § 245(a) & (c).

**1022**

as a necessary premise that Congress intended to displace state laws which regulate the type of conduct allegedly here involved. The Senate Committee Report, in describing the purposes of the Act, disclaimed any intention to occupy the field or preempt state criminal laws, and specifically stated that in order to be under the Act's protection, one is required to be acting lawfully.[7]

In addition, it is clear that Section 245(b) is aimed only at intimidation by "force or threat of force" in the sense of violent activity. It was not intended to displace the ordered functioning of state legal processes, whatever the motivation of those instituting the prosecutions. New York v. Horelick, 424 F.2d 697, 702–703 (2d Cir. 1970). Any other view would work the wholesale dislocation of the relationship between federal and state courts in the administration of criminal law which the Court warned against in *Peacock*.

If petitioners' allegations are true, there may be other civil or criminal remedies available to them under federal law.[8] But the only question we decide today is whether petitioners are entitled to remove their pending state prosecutions to a federal court under the provisions of 28 U.S.C. § 1443(1). We hold that Section 245(b) does not shield petitioners from prosecution for the crimes charged and therefore we cannot clearly predict a denial of petitioners' rights under Section 245(b) from the mere pendency of the state prosecutions.

As a second basis to predict that they will be denied their equal civil rights in state courts, petitioners rely upon 42 U.S.C. § 1981 and claim that the statute which provides for the selection of the jury before which they will be tried is unconstitutional on its face and as applied.

17 P.S. § 1276 provides for the selection of prospective jurors from lists of taxables on the county rolls. Petitioners assert that as a result of this statute Negroes will be disproportionately underrepresented on their jury. We need not express an opinion as to this assertion because the statute does not expressly exclude Negroes on its face. For purposes of determining removability we are bound to distinguish between a statute which on its face discriminates in terms of race, and one which is neutral on its face but is challenged as discriminatorily applied. Only in the former situation do we have the necessary basis to clearly predict that petitioners will be denied their equal civil rights in the state courts.[9]

The posture of these cases on appeal does not put us in a position to determine whether petitioners' rights have been denied nor can we clearly predict that they will be denied in the state courts. What we decide today is merely that removal under Section 1443(1) is not appropriate in these cases.

The judgments of the district court will be affirmed.

7. S.Rep. No. 721, 90th Cong., 2d Sess. (1968), 1968 U.S. Code Cong. & Admin. News, pp. 1844–1846.

8. City of Greenwood, Miss. v. Peacock, *supra*, at 828–830, 86 S.Ct. 1800.

9. Chestnut v. New York, 370 F.2d 1 (2d Cir. 1966), cert. denied, 386 U.S. 1009, 87 S.Ct. 1355, 18 L.Ed.2d 439 (1967). Compare Murray v. Louisiana, 163 U. S. 101, 105–106, 16 S.Ct. 990, 41 L. Ed. 87 (1896) ; Smith v. Mississippi, 162 U.S. 592, 600, 16 S.Ct. 900, 40 L.Ed. 1082 (1896) ; Gibson v. Mississippi, 162 U.S. 565, 579–586, 16 S.Ct. 904, 40 L.Ed. 1075 (1896) ; Bush v. Kentucky, 107 U.S. 110, 116, 1 S.Ct. 625, 27 L.Ed. 354 (1882) ; Neal v. Delaware, 103 U.S. 370, 386–393, 26 L.Ed. 567 (1880) ; Virginia v. Rives, 100 U.S. 313, 318–323, 25 L.Ed.2d 667 (1879), with Strauder v. West Virginia, 100 U.S. 303, 310–312, 25 L.Ed. 664 (1879). See City of Greenwood, Miss. v. Peacock, *supra*, at 827–828, 86 S.Ct. 1800; Georgia v. Rachel, *supra*, at 797–804, 86 S.Ct. 1783 (1966).