The PEOPLE OF the STATE OF NEW YORK, Respondent-Appellee,

v.

David DAVIS, Petitioner-Appellant.

No. 370, Docket 32989.

United States Court of Appeals
Second Circuit.

Argued Feb. 17, 1969.

Decided March 28, 1969.

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

Henry F. Minnerop, New York City, for petitioner-appellant.

Barry L. Mendelson, Asst. Dist. Atty. (Burton B. Roberts, Dist. Atty., Bronx County), for respondent-appellee.

Before WATERMAN and FRIENDLY, Circuit Judges, and POLLACK, District Judge.*

FRIENDLY, Circuit Judge:

This appeal requires us to consider the scope of the civil rights removal statute, 28 U.S.C. § 1443(1), as construed by the Supreme Court in Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

Appellant Davis sought to remove to the District Court for the Southern District of New York a prosecution for

* Of the Southern District of New York, sitting by designation.

"menacing," N.Y.Penal Law, McKinney's Consol.Laws, c. 40, § 120.15, initiated on April 11, 1968, by the complaint of Norman Stiles in the Criminal Court of the City of New York for Bronx County. Stiles, a supervisor in the City's Department of Social Services, alleged that while he was returning from lunch, Davis, who "was tossing a rock about the size of a baseball up and down," called Stiles over and said "I'm going to put this rock right through your head, if you are not taken off my case I'll see that you are taken off after five."

The amended petition for removal alleges that Davis, a white man married to a Negro woman, is on the welfare rolls of New York City's Social Services Department; that Mr. and Mrs. Davis attempted to obtain housing in a white neighborhood in the Bronx; that the Social Services Department discouraged this effort; that the effort succeeded "only after the opposition of the landlord, abetted by the Department, was overcome with the help of the Human Rights Commission of the State of New York"; that Stiles, who later became Davis' case supervisor, expressed resentment at the latter's geographical location, remarked that he would make sure no Negro or Puerto Rican client of his would move into a white neighborhood, and threatened to see to it that Mr. and Mrs. Davis would be "shipped out" of theirs; that when Stiles served the criminal summons, he expressed pleasure at being able to take care of "nigger lovers"; and that the charge of "menacing" was completely false. The State having moved to remand, Judge Frankel granted the motion without an evidentiary hearing. The order is appealable under the exception to the general prohibition of review of remand orders, 28 U.S.C. § 1447(d), established by § 901 of the Civil Rights Act of 1964, 78 Stat. 241.

The century-old statute, 28 U.S.C. § 1443(1), authorizes removal of a civil action or criminal prosecution commenced in a state court:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof * *."

Davis does not assert that the New York courts will deny him justice even in a general sense, let alone in the special one required under the removal provision by the line of cases beginning with Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880) and Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1880), and ending with Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906), namely, that some provision of the constitution or statutes of the State would prevent his enforcing the specified federal rights in its courts. His contention is rather that the removal petition sufficiently shows a situation where the very prosecution of Stiles' charge in the New York courts would constitute a denial of "a right under any law providing for the equal civil rights of citizens of the United States," within the narrow additional area recognized by Georgia v. Rachel, *supra*, to be embraced by the removal statute.

The state prosecution in *Rachel* was of persons seeking to obtain service in restaurants, under a Georgia statute, Ga. Code Ann. § 26–3005 (1965 Cum.Supp.), making it a misdemeanor "for any person, who is on the premises of another, to refuse and fail to leave said premises when requested to do so by the owner or any person in charge of said premises or the agent or employee of such owner or any person in charge." Section 201(a) of the later enacted Civil Rights Act of 1964, 42 U.S.C. § 2000a(a), guaranteed "the full and equal enjoyment" of places of public accommodation "without discrimination or segregation on the ground

of race, color, religion, or national origin," and § 203, 42 U.S.C. § 2000a–2, provided that no person shall "(c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege" secured by § 201. In Hamm v. City of Rock Hill, 379 U.S. 306, 311, 85 S.Ct. 384, 389, 13 L.Ed.2d 300 (1964), the Supreme Court had held that § 203 "prohibits prosecution of any person for seeking service in a covered establishment, because of his race or color"; the Civil Rights Act, as the Court stated, "substitutes a right for a crime." 379 U.S. at 314, 85 S.Ct. at 390. It followed that if Rachel and other defendants could establish they had been ordered to leave the restaurants solely for racial reasons, prosecution in the state courts would deny "a right under any law providing for the equal civil rights of citizens of the United States" and the condition of 28 U.S.C. § 1443(1) would thus be satisfied.

Davis seeks to bring his case within the *Rachel* doctrine on the following basis: Section 804 of the Fair Housing Act of 1968, 42 U.S.C. § 3604, which, like the Civil Rights Act of 1964, is indubitably a "law providing for the equal civil rights of citizens of the United States," prohibits discrimination in the sale or rental of dwellings covered by its terms "because of race, color, religion, or national origin." Section 817, 42 U.S.C. § 3617, makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" any right granted by § 804. The removal petition alleges that, by initiating the prosecution, Stiles was doing just that. Hence, if Davis can substantiate that allegation at an evidentiary hearing, maintenance of the prosecution in the courts of New York would deny a right guaranteed by § 817.

While the argument has evident force, there is the distinction that in *Rachel*

the conduct charged as a criminal offense, to wit, not leaving the restaurants on request, was alleged by the defendants to be the very activity in which the Civil Rights Act gave them a right to engage, namely, enjoyment of equal access to places of public accommodation. A true parallel under the Fair Housing Act would be, for example, if Davis were being prosecuted under a statute forbidding tenancy by persons not approved by a majority of the dwellers in an apartment house and the removal petition alleged that the basis for disapproval was Davis' being a party to a mixed marriage. In such an instance, on the facts claimed by the defendant, § 804 of the Fair Housing Act would have substituted a federal right to occupy the apartment for what the state had branded as a crime. In contrast the Fair Housing Act confers no right to menace or assault anyone, including persons who have allegedly demonstrated hostility to its purposes.

█ The significance of the distinction is established by the companion case of City of Greenwood v. Peacock, *supra.* Among the prosecutions with which that opinion dealt was one of members of a group engaged in a drive to encourage Negro voter registration. Section 131(c) of the Civil Rights Act of 1957, 42 U.S.C. § 1971(b), prohibited, in language very similar to § 817 of the Fair Housing Act of 1968, any intimidation of or attempt to intimidate any person for the purpose of interfering with his right to vote, and § 11(b) of the Voting Rights Act of 1965, 42 U.S.C. § 1973i (b), enacted after the prosecutions were begun but while the remand proceedings were pending, prohibited such acts with respect to any person urging or aiding another to vote or attempt to vote. The Court held the prosecutions were not removable even if petitioners could substantiate their allegations that they had done none of the acts charged and that the prosecutions were designed for in-

timidation. It distinguished *Rachel* on the basis that "the Civil Rights Act of 1964 as construed in *Hamm* thus specifically and uniquely conferred upon the defendants an absolute right to 'violate' the explicit terms of the state criminal trespass law with impunity under the conditions alleged in the *Rachel* removal petition, and any attempt by the State to make them answer in a court for this conceded 'violation' would directly deny their federal right 'in the courts of [the] State.' " In contrast, "no federal law confers an absolute right on private citizens—on civil rights advocates, on Negroes, or on anybody else—" to violate the generally applicable state criminal laws involved in *Peacock*,[1] and "no federal law confers immunity from state prosecution on such charges," 384 U.S. at 826–827, 86 S.Ct. at 1811–1812 [2]—even when, as was alleged there, the state prosecutions were intended to intimidate persons exercising their rights to vote or to encourage voting.[3] The line is thus between prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal rights statute under the circumstances alleged by the petitioner, and prosecutions where the only grounds for removal are that the charge is false and motivated by a desire to discourage the

petitioner from exercising or to penalize him for having exercised a federal right. North Carolina v. Hawkins, 365 F.2d 559 (4 Cir. 1966); Orange v. Alabama, 386 F.2d 829 (5 Cir. 1967); Wyche v. Louisiana, 394 F.2d 927 (5 Cir. 1967).[4] To apply this distinction requires the court to scrutinize the state criminal statute and the charge thereunder as well as the factual allegations in the removal petition, since removal is not authorized if the petition simply denies facts that would be essential to a conviction on the charge and alleges improper motivation. "It is *not* enough to support removal under § 1443(1) to allege or show * * * that the charges against the defendant are false." City of Greenwood v. Peacock, *supra*, 384 U.S. at 827, 86 S.Ct. at 1812. Putting the matter in a slightly different way, whereas the Civil Rights Act of 1964 had rendered Georgia's refusal to leave on demand statute unconstitutional in cases where the demand was racially motivated, the Fair Housing Act has not rendered New York's "menacing" statute unconstitutional simply because the defendant claims that the prosecution is basely motivated and that he did not do what has been charged.

The distinction thus made by the Court is responsive to the proper working of our federal system. The

---

1. The defendants were charged with such acts as obstructing a public street, contributing to the delinquency of a minor, driving an automobile without a license, and biting a policeman.

2. Footnote 25 of the opinion mentioned the absence from any of the federal statutes invoked in *Peacock* of a prohibition against punishment similar to that contained in § 203(c) of the Civil Rights Act of 1964, the provision involved in *Hamm* and *Rachel*.

3. While we do not disagree with the recent decision in Whatley v. City of Vidalia, 399 F.2d 521 (5 Cir. 1968), we cannot accept the view of the majority opinion that the *Peacock* court did not take account of § 11(b) of the Voting Rights Act of 1965, which was enacted subsequent to initiation of the state prosecutions there sought to be removed. Mr.

Justice Stewart, writing for the majority, referred to § 11(b), 384 U.S. at 811, fn. 3, 86 S.Ct. 1800, 16 L.Ed.2d 944, and Mr. Justice Douglas made it a principal basis for the dissent, 384 U.S. at 847–848, 86 S.Ct. 1800. See also Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964).

4. The facts of this case do not require us to decide the issue that created a partial division of the court in Achtenberg v. Mississippi, 393 F.2d 468 (5 Cir. 1968), namely, whether, despite what seems to be the contrary thrust of *Peacock*, a prosecution may be removable under § 1443(1) if the defendant claims he was engaged in conduct so closely related to that protected by the federal equal rights statute that the criminal charges are only "convenient tags."

overlong delayed enactment of federal legislation guaranteeing equal civil rights has unfortunately been accompanied by frequent clashes between the beneficiaries of such legislation and others. These create tension between two important objectives—due protection of the federally accorded rights and maintenance of order by preventing improper resort to self-help. The basic responsibility for preserving the peace remains with the states, with additional redress available in the federal courts where states fail to discharge their task. See *City of Greenwood v. Peacock, supra,* 384 U.S. at 828–830, 86 S.Ct. 1800. It is undesirable, especially with respect to criminal prosecutions, that a removal statute should require a preliminary trial in the federal court of the issue of removability, see *id.* at 832–835, 86 S.Ct. 1800; avoidance of this was one of the purposes of the *Strauder-Rives* reading of the predecessor of § 1443(1). While *Rachel* does entail in some instances a trial preliminary to the determination of federal jurisdiction, this is on what the Court evidently considered to be a rather narrow issue, whether the conduct charged is within the area withdrawn by the federal statute from the ambit of allowable state prosecution—not, as is here proposed, on the very question that is the subject of the state criminal charge. The Supreme Court has determined that neither the language nor the history of § 1443(1) supports a conclusion that Congress meant to disrupt so radically the criminal processes of the fifty states and to impose so considerable a burden on the federal courts throughout the nation. Rather in a case like this, "under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *City of Greenwood v. Peacock, supra,* 384 U.S. at 828, 86 S.Ct. at 1812.

The court wishes to acknowledge the devoted services rendered appellant without compensation by Henry F. Minnerop, Esq.

Affirmed.