**Golden FRINKS et al., Appellants,**

**v.**

**STATE OF NORTH CAROLINA, Appellee.**

**George KIRBY, Appellant,**

**v.**

**STATE OF NORTH CAROLINA, Appellee.**

**Nos. 71-2125, 72-1202.**

United States Court of Appeals, Fourth Circuit.

Argued May 30, 1972.

Decided Oct. 4, 1972.

---

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

James E. Keenan, Durham, N. C. (Paul & Keenan, Durham, N. C., on brief), for appellants Golden Frinks and others.

Thomas F. Loflin, Ill., Durham, N. C., (Loflin, Anderson & Loflin, Durham, N. C., on brief), for appellant George Kirby.

James T. Stroud, Jr., District Sol., Fifth Judicial District, for appellee.

Before SOBELOFF, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Golden Frinks and George Kirby appeal from orders of the United States District Court for the Eastern District of North Carolina, 333 F.Supp. 169, remanding to the North Carolina courts prosecutions against them which they had removed to the federal court pursuant to 28 U.S.C.A. § 1443(1). We think the district court correctly found that their petitions did not allege facts sufficient to sustain removal, or to require a hearing on removability, and affirm.

Frinks and Kirby are charged by the State of North Carolina with engaging

in a riot in violation of N.C.G.S. § 14–288.2(a) & (b):

§ 14–288.2. Riot; inciting to riot; punishments. (a) A riot is a public disturbance involving an assemblage of three or more persons which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.

(b) Any person who wilfully engages in a riot is guilty of a misdemeanor . . . .

Frinks is charged also with inciting to riot in violation of N.C.G.S. § 14–288.-2(d):

(d) Any person who wilfully incites or urges another to engage in a riot, so that as a result of such inciting or urging a riot occurs or a clear and present danger of a riot is created, is guilty of a misdemeanor . . . .

The removal petitions rest on 28 U.S.C.A. § 1443(1), which provides as follows:

§ 1443. Civil rights cases

Any of the following civil actions or criminal prosecutions, commenced in a State Court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof . . . .

Except for references to the inciting-to-riot charges against Frinks, the petitions for removal are identical and in pertinent part are set out in Appendix A.

By way of summary, the petitions allege that Mr. Frinks and Mr. Kirby have been engaged in lawful civil rights marches, demonstrations and boycotts; that such activities have been peaceful and nonviolent; that even so the State has attempted to punish the petitioners for their having exercised, or attempting to exercise, rights and privileges secured by Title 2 of the 1964 Civil Rights Act; and that for the purpose of chilling the exercise of such rights the State has falsely charged petitioners with rioting in two business establishments which are places of public accommodation within the meaning of 42 U.S.C.A. § 2000a(b).

Petitioners do not admit that they were present on the premises of the two business establishments, but allege that "if petitioners have ever been so present," their conduct has been peaceful and not in violation of the laws of North Carolina. Petitioners neither admit nor deny the charge contained in the warrants that some 20 persons entered the business establishments and threw merchandise on the floor and overturned merchandise racks in violation of N.C. G.S. § 14–288.2. Thus the defenses to the criminal charges, as alleged in the petitions for removal, are that (a) these petitioners were not present at the places of disturbance, or (b) if present, these petitioners were nonviolent and did not participate in any riot that may have occurred.

█ We wholeheartedly agree with petitioners that they have a federal right not to be prosecuted because of their race for peacefully seeking to enjoy public accommodations. 42 U.S.C.A. §§ 2000a(a) & 2000a–2(c); Hamm v. Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964); Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). But we also agree with the State that there is no federally protected right to engage in a riot.

[N]o federal law confers an absolute right on private citizens—on civil rights advocates, on Negroes, or on anybody else—to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman. . . . [N]o federal law con-

fers immunity from state prosecution on such charges.

Greenwood v. Peacock, 384 U.S. 808, 826–827, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966).

The problem is simply a factual one. Has the State undertaken to persecute and oppress these petitioners because of State antagonism to the federally protected right of all persons to enjoy public accommodations, or has the State, recognizing the supremacy of federal law, undertaken the prosecutions only to protect the property and safety of its citizens from the danger of riot?

Unfortunately, the facts are not ascertainable without a hearing—either in a federal or state court. We agree with Judge Godbold that "In Peacock the Supreme Court has directed the federal courts away from making factual inquiries approaching that of trial of the merits as an incident of determining removability." Achtenberg v. Mississippi, 393 F.2d 468, 477 (5th Cir. 1968) (concurring in part and dissenting in part). The practical reasons for such direction are compelling. Mr. Justice Stewart, writing for the Court in Peacock, envisioned what might result:

On motion to remand, the federal court would be required in every case to hold a hearing, which would amount to at least a preliminary trial of the motivations of the state officers who arrested and charged the defendant, of the quality of the state court or judge before whom the charges were filed and of the defendant's innocence or guilt. And the federal court might, of course, be located hundreds of miles away from the place where the charge was brought. This hearing could be followed either by a full trial in the federal court, or by a remand order. Every remand order would be appealable as of right to a United States Court of Appeals and, if affirmed there, would then be reviewable by petition for a writ of certiorari in this Court. If the remand order were eventually affirmed, there might, if the witnesses were still available, finally be a trial in the state court, months or years after the original charge was brought. If the remand order were eventually reversed, there might finally be a trial in the federal court, also months or years after the original charge was brought.

Peacock, supra, 384 U.S. at 832–833, 86 S.Ct. at 1815.

This case is controlled by Peacock rather than Rachel. Peacock, supra, 384 U.S. at 828, 86 S.Ct. at 1812, held:

Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state . . . law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court. [Emphasis added.]

Rachel represented direct confrontation between the 1964 Civil Rights Act and the trespass laws of the State of Georgia. Georgia law made it a criminal trespass offense to refuse to leave facilities of public accommodation when asked to do so by the owner or person in charge. The federal law invalidated the Georgia trespass statute, at least where the request to leave was invidiously motivated, and substituted "a right for a crime." Hamm, supra, 379 U.S. at 314, 85 S.Ct. 384, 13 L.Ed.2d 300. Because the Georgia trespass law was void in an invidious context, the federal rights of those charged with its violation could have been denied by the mere institution of charges. As Hamm made clear, the Civil Rights Act of 1964 protects persons who refuse to obey an order to leave public accommodations, not only from conviction in state courts, but from prosecution in those courts.

A hearing was justified in Rachel by the great probability that a federal right would be denied if the prosecution were not removed. Such probability does not exist here. The 1964 Civil Rights Act does not in any sense void

the anti-riot laws of North Carolina. If these petitioners' federal rights are in fact being denied, the denial is not "manifest in a formal expression of state law." *Rachel, supra,* 384 U.S. at 803, 86 S.Ct. at 1796.

■ A white storekeeper may lawfully order Negro persons in his store to discontinue destruction of his property whether or not he is racially prejudiced. He may not, however, for racial reasons lawfully order nonviolent persons to leave. As an exercise in probability prediction, we may confidently assert that there is a far greater probability that a trespass warrant will be flawed by a policy of invidious discrimination than that a riot warrant will be similarly invalidated. This is so because the riot warrant will be valid if violence (the essential element) occurred, whereas the trespass warrant may be void even though presence over the protest of the owner (the essential element) is admitted. This is so, in turn, because peaceful presence is protected and violence is not. Race, color, or creed may well be a sufficient defense to a charge of trespass, but are wholly irrelevant to a charge of rioting.

■ If these petitioners "are being prosecuted on baseless charges solely because of their race, then there has been an outrageous denial of their federal rights, and the federal courts are far from powerless to redress the wrongs done to them." *Peacock, supra,* 384 U.S. at 828, 86 S.Ct. at 1813. But removal is not the remedy, *see Peacock, supra* at 828–830, 86 S.Ct. 1800, 16 L.Ed.2d 944, unless we can clearly predict from the operation of an explicit state law that federal rights will inevitably be denied them, and that we cannot do.

Affirmed.

## APPENDIX A

### REMOVAL PETITION
### JURISDICTION

1. Jurisdiction is conferred on the United States District Court pursuant to the provisions of § 1443(1) of Title 28, United States Code, this being an action in which petitioners allege that they are being denied a right under a law providing for equal rights, particularly § 2000a(a) of Title 42, United States Code, and that they are denied or cannot enforce said equal rights in the Courts of the State of North Carolina.

### PARTIES

2. Petitioners . . . are Negro citizens of the United States and the State of North Carolina.

3. Respondent is the State of North Carolina.

### BASIS FOR REMOVAL

4. Petitioners are members and participants in a coalition grouping of black citizens in the New Hanover County area of North Carolina known as the "Wilmington Movement." The purpose of said movement was to seek the full enforcement and enjoyment of equal rights granted to black citizens of the United States by the Civil Rights Act, and in particular Titles II, IV and VII of the Civil Rights Act of 1964.

5. As a means of publicizing their grievances, the "Wilmington Movement", and in particular each of the petitioners, has engaged in protest marches, demonstrations and boycotts. All such activities have been peaceful and have specifically rejected violence to person or property as a protest tactic. All such protests have been within the ambit of protected free speech guaranteed to petitioners by the First Amendment to the Constitution of the United States.

6. On or about the 10th or 11th day of June, 1971, each of the petitioners was arrested and charged under the North Carolina Anti-Riot Statute, see North Carolina General Statute § 14–288.2, with participation in a riot, and in the case of petitioner Frinks, with the additional charge of inciting to riot.

7. Specifically, petitioners . . . are charged with:

(a) Engaging in a riot on or about the 9th day of June, 1971 at the Piece

Good Shops, Azalea Shopping Center in Wilmington, North Carolina wherein it is alleged that some twenty (20) persons did enter said business and throw merchandise on the floor and overturn merchandise racks, all in violation of North Carolina General Statute § 14–288.2(b) (see Complaints and Warrants for Arrest attached as Exhibits 1, 2 and 3 to Petition);

(b) Engaging in a riot on or about the 9th day of June, 1971 at J. M. Fields, 3709 Oleander Drive, Wilmington, North Carolina wherein it is alleged that some twenty (20) persons did enter said business and throw merchandise on the floor and overturn merchandise racks, all in violation of North Carolina General Statute § 14–288.2(b) (See Complaints and Warrants for Arrest attached as Exhibits 4, 5 and 6 to Petition);

8. In addition, petitioner Frinks is charged with:

(a) Urging some twenty persons to engage in a riot, to wit: a public disturbance involving an assemblage of three or more persons at said Piece Goods Shop, it being alleged that petitioner Frinks led said group of persons into said business and urged the throwing of merchandise on the floor and the turning over of merchandise racks, all in violation of North Carolina General Statute § 14–288.2(d); (see Complaint and Warrant for Arrest attached as Exhibit # 7 to Petition);

(b) Urging some twenty persons to engage in a riot, to wit: a public disturbance involving an assemblage of three or more persons at said J. M. Fields, it being alleged that petitioner Frinks led said group of persons into said business and urged the throwing of merchandise on the floor and the turning over of merchandise racks, all in violation of North Carolina General Statute § 14–288.2(d) (See Complaint and Warrant for Arrest attached as Exhibit # 8 to Petition).

9. Petitioners have advocated and personally enjoyed the equal civil rights granted to them by Section 2000a(a) of Title 42, United States Code, which guarantees that "all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race . . . ."

10. The said Piece Goods Shop and J. M. Fields are public accommodations within the meaning of Section 2000a(b) of Title 42, United States Code.

11. The presence of petitioners on the premises of the Piece Goods Shop or J. M. Fields, if petitioners have ever been so present, has been peaceful and without acts or actions in violation of the laws of the State of North Carolina and accordingly is protected by Section 2000a(a) of Title 42, United States Code.

12. The warrants for arrest and attempted prosecutions of petitioners as heretofore alleged by respondent State of North Carolina is an attempt to punish petitioners for the exercise or attempt to exercise a right and privilege secured by Section 201 of Title II of the 1964 Civil Rights Act, 42 United States Code Section 2000a(a), and accordingly is specifically prohibited by Section 203 of Title II of the 1964 Civil Rights Act, 42 U.S.C. § 2000a–2(c).

13. Respondent has and is using unconstitutional statutes or otherwise constitutional statutes in an unconstitutional manner to deprive black citizens of the United States of rights specifically granted to them by the Civil Rights Act of the Congress of the United States. Prosecutions under said statutes are forbidden and accordingly said black citizens, including petitioners, cannot enforce in the Courts of the State of North Carolina a right under a law providing for the equal civil rights of citizens of the United States, and accordingly are entitled to have their cases re-

moved to the Courts of the United States.

SOBELOFF, Senior Circuit Judge (dissenting):

The State of North Carolina has charged Golden Frinks and George Kirby, two individuals who in the past had been active in peaceful civil rights demonstrations, with engaging in riots at Piece Goods Shop and J. M. Fields in Wilmington, North Carolina. Additionally, Frinks was charged with inciting the riots.

The two men filed removal petitions under 28 U.S.C. § 1443(1),[1] alleging that the prosecutions were an attempt by the state to punish them for having exercised or attempted to exercise rights and privileges secured by Title II of the 1964 Civil Rights Act.[2] They deny being present at the stores at the time alleged, and alternatively contend that if present, they were nonviolent and did not engage in any riot.

Two diametrically opposed claims are presented. On the one hand, the State of North Carolina maintained that the defendants are being prosecuted for entering the two stores and tipping over clothing racks. On the other hand, Kirby and Frinks deny these allegations of the state, and assert moreover that the charges were "trumped up" in order to punish them for having exercised federally protected rights.

The majority recognizes the petitioners' federal right not to be prosecuted for seeking to enjoy "public accommodations."[3] They point out additionally, however, that there is no federally protected right to engage in a riot. The difficulty in the instant case is that the real facts cannot be determined without an evidentiary hearing.

The question here becomes the important one under 28 U.S.C. § 1443(1) which this court expressly left open in South Carolina v. Moore, 447 F.2d 1067 (4 Cir. 1971), "whether or not a district court is properly required to resolve such a factual issue [as violence] when considering a removal petition, or whether it may confine its view to the allegations of the state charge if they unequivocally charge violent conduct * * *," *supra*, 447 F.2d at 1071, n. 9. Today, this question is answered, but in a manner which accords inadvisable and unnecessary deference to state prosecutions.

The majority would have a district court summarily dismiss a removal petition without an evidentiary hearing whenever the state has alleged a crime of which violence is an element. A petitioner is thereby denied the opportunity to vindicate his contention that, by means of a bogus prosecution, the state is attempting to mete out punishment for the exercise or attempted exercise of rights secured by the public accommodations section of the Civil Rights Act of 1964. The state prosecutor is permitted to attach a convenient tag to a defendant's conduct, and this labeling, rather than what the individual was actually doing, becomes the test of removability. Such a result, according to the majority, is dictated by Greenwood v. Peacock, 384

---

1. 28 U.S.C. § 1443(1) provides:
    Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
    (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof.

2. 42 U.S.C. §§ 2000a to 2000a–6.

3. 42 U.S.C. § 2000a provides that:
    All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities * * * of any place of public accommodation * * * without discrimination or segregation on the ground of race, color, religion, or national origin.
    Title II of the 1964 Civil Rights Act is commonly called the public accommodations section.

U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

Respectfully, I disagree. Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and not *Peacock* is controlling here. The petitioners in *Peacock* and *Rachel* relied on entirely different rights. The Supreme Court in *Peacock* recognized that the petitioners there were bottoming their arguments on rights supposedly guaranteed by the First and Fourteenth Amendments to the Constitution and the Voting Rights Acts of 1964 and 1965. *Peacock, supra,* 384 U.S. at 811, n. 3, 86 S. Ct. 1800, 16 L.Ed.2d 944. In the instant case, as in *Rachel,* the petitioners alleged violation of rights guaranteed by the public accommodations section of the Civil Rights Act of 1964. This latter legislation, unlike the voting rights acts, contains a specific prohibition against state action that "punish[es] or attempt[s] to punish." [4] This significant difference was noted by the Supreme Court in *Peacock* itself. The Court there declared that "Section 203(c) of the Civil Rights Act of 1964 * * * explicitly provides that no person shall

'punish or attempt to punish any persons for exercising or attempting to exercise any right or privilege' secured by the public accommodations section of the Act. *None of the federal statutes invoked by the defendants in the present case contains any such provision.* See note 3 and note 7 *supra.*" *Peacock, supra,* 384 U.S. at 827 n. 25, 86 S.Ct. at 1812 (emphasis added).

The majority apparently does not perceive it to be a fundamental feature of this case that it deals with civil rights legislation that bans *punishing* or *attempts to punish* rather than legislation prohibiting *intimidating* or *attempts to intimidate.* Although New York v. Davis, 411 F.2d 750 (2 Cir. 1969), is not cited, my brethren apparently adopt Chief Judge Friendly's equation for the purposes of removal under § 1443(1) of the two types of statutes. Significantly, after a year "of further study of the *Peacock* opinion," Judge Friendly indicated second thoughts and emphasized that the question of whether the two types of statutes can be equated for removal purposes was left open.[5]

---

4. Section 203(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–2(c) declares that "No person shall punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a–1 of this title."

5. Judge Friendly noted that:
   As a result of further study of the *Peacock* opinion, we are not so sure as a year ago, New York v. Davis, *supra,* 411 F.2d at 754, n. 3, that civil rights statutes that ban intimidating, threatening or coercing are to be equated, for purposes of removal under § 1443(1), with a statute that prohibits punishing or attempting to punish, language that reads directly on the state. As already noted, one of the two significant points of distinction taken in *Peacock* was that "no federal law confers immunity from state prosecution on such charges," 384 U.S. at 827, 86 S.Ct. at 1812. Justice Stewart annotated this with a reference to the provision in § 203(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–2 (c), that no person shall "punish or at-

tempt to punish any person" for exercising rights to public accommodations, a statement that "none of the federal statutes invoked by the defendants in the present case contains any such provision," and a cross-reference to notes 3 and 7. Note 3 referred to the provisions of the Voting Rights Acts of 1957 and 1965 described in the text, with a "See also" citation to the latter. Commentators apparently believe, although with regret, that the Court meant to confine the *Rachel* basis for removal to "unique" statutes, see 384 U.S. at 826, 86 S.Ct. 1800, which in terms prohibit prosecution. [Citations omitted.] On the other hand, it is arguable that citation in a footnote would be a rather elliptical way to decide such an important question, and that the limitation of removal to statutes using the words "punish or attempt to punish" is confined to cases like *Peacock* where the conduct was not within the protection of a federal civil rights act when it occurred. We leave the question open. New York v. Horelick, 424 F.2d 697, 702–703 n. 4 (2 Cir. 1970).

The question left open by Judge Friendly is the central question imperatively demanding an answer in the instant case.

To deny an evidentiary hearing to petitioners such as Kirby and Frinks on their removal petitions solely because the state charges them with a crime encompassing an element of violence dilutes and severely limits the rights and privileges which Congress sought to specially immunize by Section 203(c). If the allegations of the petitioners in this case should prove correct, then the state is guilty of an attempt to punish persons for the exercise of rights secured by the public accommodations section—a result which Congress specifically sought to forbid when it enacted Section 203(c). District courts must decide the truthfulness of removal petitions if Section 203(c) is to retain vitality and successfully immunize from state interference this type of statutorily protected conduct.

The Supreme Court in *Rachel* established a two-pronged test for removal under Section 1443(1), requiring that petitioners demonstrate "both that the right upon which they rely is a 'right under any law providing for * * * equal civil rights,' and that they are 'denied or cannot enforce' that right in the courts of [the state]." 384 U.S. at 788, 86 S.Ct. at 1788. The first prong of this test is satisfied since the public accommodations section of the Civil Rights Act of 1964 creates rights "under any law providing for * * * equal civil rights." Section 203(c) enjoins "any attempt to punish" persons for exercising these rights. Hamm v. City of Rock Hill, 379 U.S. 306, 311, 85 S.Ct. 384, 389, 13 L.Ed.2d 300 (1964), has interpreted this section to include within its prohibition prosecution in a state court. Hence, if the petitioners' allegations in this case are found to be true and the state is indeed attempting to punish them for exercising rights guaranteed by the public accommodations section, then there is a "denial of equal civil rights," the two prongs of the *Rachel*

test are satisfied, and removal is in order.

The existence of a conflict between allegations in a removal petition and those in the criminal indictment is a rational ground for holding a hearing to resolve the conflict; it is certainly no reason for dismissing the petition out of hand. Only an evidentiary hearing can insure that the state is not unduly interfering with specially protected civil rights. For "the mere pendency of prosecutions [where such rights are involved] enables the federal court to make the clear prediction that the defendants will be 'denied or cannot enforce in the courts of [the] State' the right to be free of any 'attempt to punish' them for protected activity. It is no answer in these circumstances that the defendants might eventually prevail in the state court. The burden of having to defend the prosecution is itself the denial of a right explicitly conferred by the Civil Rights Act of 1964 as construed in Hamm v. City of Rock Hill." *Rachel, supra,* 384 U.S. at 805, 86 S.Ct. at 1797. Nor can it be said that the interposition of a hearing would erode the state's prosecution. If the state can establish a just basis for its prosecution, the removal petition will be denied and the case will be remanded for trial in the state court.

"The petition for removal [must] be determined not by the appellation or euphemism of the charge but by what the movant [petitioner] was actually doing." Walker v. Georgia, 417 F.2d 1, 5 (5 Cir. 1969). Whether the alleged offense be trespass as in *Rachel,* or a crime encompassing an element of violence such as aggravated battery, State of Louisiana v. Perkins, 335 F.Supp. 366 (E.D.La.1971), the Fifth Circuit holds a hearing to determine whether or not the charge is spurious, intended only to punish the defendants for exercising protected rights. *Walker, supra*; Whatley v. City of Vidalia, 399 F.2d 521 (5 Cir. 1965), Wyche v. State of Louisiana, 394 F.2d 927 (5 Cir. 1967). I think that Section 203(c) interdicts "attempts to punish" and mandates an evidentiary

hearing to defendants claiming that they are being prosecuted for the exercise of rights under the public accommodations section. Any other reading of the statute would emasculate the immunization clause of Section 203(c). Unless there is an evidentiary hearing, the defendant charged with violent conduct will always be forced to submit to state prosecution to vindicate his Title II rights. Such a practice permits the characterization given by the prosecution to the conduct in question to become the touchstone for removal or non-removal.

It is true, as has been suggested, that the defendant may ultimately prevail in the state courts, or that he has other federal remedies including direct review by the Supreme Court or habeas corpus. But the burden of having to defend a prosecution is in itself a denial of a right immunized by Section 203(c). *Rachel, supra,* 384 U.S. at 780, 86 S.Ct. 1783, 16 L.Ed.2d 925.

The majority asserts a distinction between this case and *Rachel* in terms of probability. "A hearing," my colleagues concede, "was justified in *Rachel* by the great probability that a federal right would be denied if the prosecution were not removed." [Majority Opinion at p. 642.] But they argue in the following paragraph that such probability does not exist in the instant case:

As an exercise in probability prediction, we may confidently assert that there is a far greater probability that a trespass warrant will be flawed by a policy of invidious discrimination than that a riot warrant will be similarly invalidated. This is so because the riot warrant will be valid if violence (the essential element) occurred, whereas the trespass warrant may be void even though presence over the protest of the owner (the essential el-

ement) is admitted. This is so, in turn, because peaceful presence is protected and violence is not. (Majority Opinion at p. 643.)

The logic of the distinction adumbrated by the majority eludes me. If the state wishes to "punish" an individual for exercising protected rights, and it is known that a trespass prosecution will be removed to federal court while a charge of inciting to riot will not be removed, it seems more likely that the state will charge the person with inciting to riot rather than trespass. Should we choose to analyze the instant case in terms of probability of discriminatory state motive, then it follows that *if the allegations of the petitioner in their removal petitions are true,* just as in *Rachel* "the mere pendency of [these] prosecutions enables the federal court to make the clear prediction that the defendants will be 'denied or cannot enforce in the courts of [the] State' the right to be free of any 'attempt to punish' them for protected activity." Veracity of the removal petition can be determined only in a preliminary evidentiary hearing.

Whenever the state prosecutes a person and he petitions for removal to the federal district court, alleging that he is being prosecuted *solely for having peacefully exercised rights immunized by Section 203(c),* the district court should hold a hearing to determine the validity of the petitioner's claim. State action cannot be shielded from scrutiny by a prosecutor's decision to choose one rather than another appellation to denote an activity. Only by requiring such an evidentiary hearing can we insure that protected activity will not be punished by criminal prosecution.

Therefore I dissent.