UNITED STATES of America, Appellee,

v.

Sandy TOWNSLEY, Appellant.

UNITED STATES of America, Appellee,

v.

Ernest (Pat) GANDY, Appellant.

UNITED STATES of America, Appellee,

v.

Sorkis WEBBE, Jr., Appellant.

Nos. 86–1045, 86–1075 and 86–1188.

United States Court of Appeals, Eighth Circuit.

Submitted July 12, 1988.

Decided Sept. 16, 1988.

2. The Honorable Patrick J. McNulty, United States Magistrate for the District of Minnesota.

Burton H. Shostak, Clayton, Mo., and Irl B. Baris, St. Louis, Mo., for appellant.

James E. Crowe, Jr., Asst. U.S. Atty., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, and BEAM, Circuit Judges, *En Banc.*

BOWMAN, Circuit Judge.

The panel opinion in this case is reported at 843 F.2d 1070 (8th Cir.1988). In Part V of that opinion, 843 F.2d at 1082–84, a majority of the panel held that Webbe and Townsley, who are white, have standing to join Gandy, their black co-defendant, in attacking the government's use of ten of its twelve peremptory challenges to remove black veniremen. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). The dissent argued that only Gandy is entitled to raise this issue, and that Townsley and Webbe have no standing to complain about the exclusion of black jurors.

This Court granted rehearing en banc on the narrow question whether in the circumstances of this case Townsley and Webbe have standing to challenge the alleged improper use of peremptory challenges by the prosecution to strike black persons from the petit jury. For the reasons set forth in the dissent from the panel opinion on this issue, *see* 843 F.2d at 1088–89, we hold that Townsley and Webbe do not have such standing and are not entitled to join in Gandy's *Batson* challenge. We add only that the present dissenting opinion's grandiloquent attempt to liken Townsley and Webbe to white civil rights workers and other whites who have faced racial animus because of either their efforts to help blacks or their lawful association with blacks, *see post* at 1193–1194, appears to us to be strangely divorced from the facts of this case. Townsley and Webbe are hardly civil rights workers. They have been convicted of vote fraud, a crime that strikes at the heart of the democratic process. The evidence of their guilt is overwhelming. Their association with blacks, insofar as revealed by the record in this case, has consisted of enlisting them in criminal pursuits. There is simply no factual basis for the argument that the prosecution's use of its peremptory strikes to eliminate black jurors may have violated the rights of these white defendants under the Equal Protection Clause.

In any event, the *Batson* rule is clear and straightforward: "To establish [a prima facie] case, the defendant first must show that he is a member of a cognizable racial group, ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Other courts have had no difficulty in following this rule, *see United States v. Angiulo,* 847 F.2d 956, 984 (1st Cir.1988) (nonblack defendants could not complain about the government's use of peremptory challenges to exclude black members from the jury), and neither do we.

Townsley and Webbe also assert that they are entitled to relief under the Sixth Amendment. This claim, which they did not press when the case was heard by the panel, is based on an argument that the fair-cross-section principle of cases such as *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed. 2d 83 (1972), should be extended from the jury pool to the petit jury. The argument fails because it ignores, just as does the dissent in the present en banc proceeding, *see post* at 1194–1195, that the Supreme Court explicitly has rejected any such extension of *Taylor* and *Peters.* The Court spoke clearly on this point in *Taylor:*

It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen

must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, *Fay v. New York*, 332 U.S. 261, 284 [67 S.Ct. 1613, 1625–26, 91 L.Ed. 2043] (1947); *Apodaca v. Oregon*, 406 U.S., [404] at 413 [92 S.Ct., 1628 at 1634, 32 L.Ed.2d 184 (1972)] (plurality opinion); but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

419 U.S. at 538, 95 S.Ct. at 701–02.

Similarly, the opinion of the Court in *Batson*, while basing relief on the Equal Protection Clause and expressing no view on the merits of the petitioner's Sixth Amendment arguments, observed that the Court never has held the fair-cross-section principle applicable to petit juries.

Indeed, it would be impossible to apply a concept of proportional representation to the petit jury in view of the heterogeneous nature of our society. Such impossibility is illustrated by the Court's holding that a jury of six persons is not unconstitutional. *Williams v. Florida*, 399 U.S. 78, 102–103, [90 S.Ct. 1893, 1907, 26 L.Ed.2d 446] (1970).

476 U.S. at 85–86 n. 6, 106 S.Ct. at 1716–17 n. 6.

Moreover, within a week after the *Batson* decision, the Court in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), reaffirmed that the fair-cross-section requirement does not extend to petit juries:

We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large. See *Duren v. Missouri*, 439 U.S. 357, 363–364 [99 S.Ct. 664, 668–69, 58 L.Ed.2d 579] (1979); *Taylor v. Louisiana*, 419 U.S. 522, 538 [95 S.Ct. 692, 701–02, 42 L.Ed.2d 690] (1975) ("[W]e impose no requirement that

petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population"); cf. *Batson v. Kentucky, ante*, at 84–85, n. 4 [106 S.Ct. at 1716 n. 4] (expressly declining to address "fair-cross-section" challenge to discriminatory use of peremptory challenges). The limited scope of the fair-cross-section requirement is a direct and inevitable consequence of the practical impossibility of providing each criminal defendant with a truly "representative" petit jury.... See *United States v. Childress*, 715 F.2d 1313 (CA8 1983) (en banc), cert. denied, 464 U.S. 1063 [104 S.Ct. 744, 79 L.Ed.2d 202] (1984); *Pope v. United States*, 372 F.2d 710, 725 (CA8 1967) (Blackmun, J.) ("The point at which an accused is entitled to a fair cross-section of the community is when the names are put in the box from which the panels are drawn"), vacated on other grounds, 392 U.S. 651 [88 S.Ct. 2145, 20 L.Ed.2d 1317] (1968). We remain convinced that an extension of the fair-cross-section requirement to petit juries would be unworkable and unsound, and we decline McCree's invitation to adopt such an extension.

476 U.S. at 173–74, 106 S.Ct. at 1764–65 (footnote omitted). It is difficult to see how the Supreme Court could express itself with greater clarity.

We conclude that neither the Equal Protection Clause nor the Sixth Amendment provides a basis for affording relief to white defendants who complain of the prosecution's use of peremptory challenges to exclude blacks from the trial jury.

Accordingly, the convictions of Townsley and Webbe on Counts I and IV are affirmed. The sentences imposed thereon are vacated and the case is remanded to the District Court for resentencing in view of the panel's reversal of the convictions on Count III, see 843 F.2d at 1080–81, and for further proceedings under *Batson* as to Gandy alone. We do not retain jurisdiction upon remand and any subsequent appeal may be had as provided by law.

HENLEY, Senior Circuit Judge, joined by Chief Judge LAY, HEANEY, McMILLIAN and ARNOLD, Circuit Judges, dissenting.

After the venire panel was reduced to forty-seven persons through strikes for cause, the government was permitted twelve peremptory challenges and the defendants twenty to arrive at the final petit jury of twelve with three alternates. Twelve black persons were among the forty-seven member venire panel. The government exercised its peremptory challenges first, using ten of its twelve challenges to remove black veniremen. The defendants struck one black venireman. The final black person served as an alternate juror and was excused prior to deliberations. Only defendant Gandy is black. However, all the defendants moved to strike the jury panel on the ground that the government unconstitutionally excluded black jurors in violation of the fifth and sixth amendments.

At the time of trial, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was pending in the Supreme Court. The government only generally stated "that there were factors affecting ... [its] exercise of the peremptory strikes going well beyond any consideration of race." The district court denied defendants' motion to strike the jury panel and denied defendants' subsequent request that the court order the government to state on the record its reasons for the peremptory challenges to black venire persons. In light of the intervening decision in *Batson,* which is applicable to this case, *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), I would remand this case for further proceedings.

*Batson* involved a black defendant tried in state court who challenged the prosecution's use of peremptory strikes to exclude blacks from the petit jury, which ultimately convicted him. *Batson,* 476 U.S. at 82, 106 S.Ct. at 1714–15. The Court granted Batson relief under the equal protection clause of the fourteenth amendment. *Id.* at 89, 106 S.Ct. at 1718–19.[1] This was a clear break from prior Supreme Court precedent that proof of discrimination against blacks in jury selection must extend beyond the facts of the defendant's own case. *Swain v. Alabama,* 380 U.S. 202, 227–28, 85 S.Ct. 824, 839–40, 13 L.Ed.2d 759 (1965), *overruled, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Swain* required the defendant to show a *systematic* exclusion of blacks. 380 U.S. at 223, 85 S.Ct. at 837; *United States v. Boykin,* 679 F.2d 1240, 1245 (8th Cir.1982). This had resulted in "prosecutors' peremptory challenges [being] largely immune from constitutional scrutiny." *Batson,* 476 U.S. at 92–93, 106 S.Ct. at 1720–21.

To establish a prima facie case under the new rule announced in *Batson,*

> the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

476 U.S. at 96, 106 S.Ct. at 1722–23 (citations omitted). The only issue on which this court has granted en banc review is

---

1. Although *Batson* was decided based on the equal protection clause of the fourteenth amendment, which applies only to the states, "[t]he fourteenth amendment recognizes no limits on state authority which the Bill of Rights and other constitutional provisions do not place on Congress." L. Tribe, *American Constitutional Law* 272 (1978). Because defendants' convictions were in federal court, their challenge can

not be founded on the fourteenth amendment which applies only to the states, but is based on the due process clause of the fifth amendment, which has equal protection attributes. *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The holding in *Batson* is therefore applicable in federal criminal proceedings.

whether the white defendants (Webbe and Townsley) have standing to join in the black defendant's (Gandy's) *Batson* challenge.

The majority rejects the challenge of defendants Townsley and Webbe to the composition of the petit jury because those defendants are both members of the white race. *See Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 ("To establish [a prima facie] case, the defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."); *United States v. Vaccaro,* 816 F.2d 443, 457 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 295, 98 L.Ed.2d 220 (1987) (white defendant lacks standing to raise *Batson's* equal protection prohibition to striking of black jurors); *United States v. Sgro,* 816 F.2d 30, 33 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1021, 98 L.Ed.2d 986 (1988). However, should Gandy make the necessary showing of discriminatory use of peremptory challenges under *Batson,* it necessarily follows that Webbe and Townsley were treated differently because they were tried together with a black defendant. Such a result is repugnant to the Constitution. *See Palmore v. Sidoti,* 466 U.S. 429, 430–34, 104 S.Ct. 1879, 1880–83, 80 L.Ed.2d 421 (1984) (where the white mother of a minor child was deprived of custody because she chose to live with a black man); *see also United States v. Brown,* 817 F.2d 674, 675–76 (10th Cir.1987) (the court held that the prosecutor improperly exercised

his peremptory challenges to strike black jurors because defendant's attorney was a prominent black political figure. No mention of defendant's race was made in the opinion although a prior opinion indicated he was black. *United States v. Brown,* 770 F.2d 912, 913 (10th Cir.1985), *rev'd sub nom. Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)).

The dissent to the panel opinion, upon which the majority now relies, contends that it "cannot be argued seriously that Townsley and Webbe suffered any prejudice from the racial composition of the petit jury." *United States v. Townsley,* 843 F.2d 1070, 1088 (8th Cir.1988) (Bowman, J., concurring in part and dissenting in part).[2] Even assuming that a showing of prejudice is necessary, the majority's hyperbole bespeaks a vision of American culture and history unclouded by reality. In the civil rights movement of the 1960's white civil rights workers faced the same racial animus as their black coworkers and in some instances died for their beliefs. *See, e.g., United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (murder of civil rights workers Michael Henry Schwerner, James Earl Chaney and Andrew Goodman); *Posey v. United States,* 416 F.2d 545, 548 (5th Cir.1969) (same), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); *Liuzzo v. United States,* 485 F.Supp. 1274, 1275–76 (E.D. Mich.1980) (murder of civil rights worker Viola Liuzzo by four members of the Ku Klux Klan).

---

2. The majority's reference to the need to demonstrate prejudice is misplaced.

It is argued that a Negro defendant's right to challenge the exclusion of Negroes from jury service rests on a presumption that a jury so constituted will be prejudiced against him; that no such presumption is available to a white defendant; and consequently that a white defendant must introduce affirmative evidence of actual harm in order to establish a basis for relief.

That argument takes too narrow a view of the kinds of harm that flow from discrimination in jury selection.

*Peters v. Kiff,* 407 U.S. 493, 498, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (plurality decision). The harm the Supreme Court sought to alleviate in *Batson* was not that the jury would be more

predisposed to convict, but that Batson's peers were discriminatorily excluded. *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717. As the following discussion in text points out, one's peers are not limited to one's race. "The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1880) (quoted with approval in *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717). A defendant's right to a jury of his peers is denied when a group, be they of defendant's race or any other race, is excluded for discriminatory reasons.

Racial animus against whites is also found in the workplace in situations where white workers attempt to assist their black coworkers in overcoming discriminatory treatment. *See Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 327, 89 S.Ct. 548, 550, 21 L.Ed.2d 519 (1969) ("When the white plaintiffs brought their [the black's] plight to the attention of the [Union], they got substantially the same treatment which the Negro plaintiffs received, except they were called 'nigger lovers' and were told they were just inviting trouble.") (quoting plaintiff's complaint); *see also Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 351 n. 2 (7th Cir.1987) (quoting plaintiff's deposition) (people plaintiff talked to were called "nigger lover").

Whites have been subjected to discrimination in housing because of their marriages to blacks. *New York v. Davis*, 411 F.2d 750, 752 (2d Cir.), *cert. denied*, 396 U.S. 856, 90 S.Ct. 119, 24 L.Ed.2d 105 (1969). Likewise, biracial couples have been discriminated against in child custody decisions. *Palmore*, 466 U.S. at 431, 104 S.Ct. at 1881. Finally, whites have been subjected to criminal violence and terrorism because of their association with blacks unrelated to civil rights activities. *United States v. Woods*, 780 F.2d 955, 956–59 (11th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 549 (1986). This cursory outline of cases is by no means exhaustive. This brief summary is offered to counter the myopic view that a white person cannot be the subject of racial discrimination because of his association with a black person.

Just as the white mother in *Palmore* was permitted by a unanimous court to challenge, on equal protection grounds, the state court's custody decision based on her marriage to a black man, *Palmore*, 466 U.S. at 432–33, 104 S.Ct. at 1882–82, I would allow Webbe and Townsley standing to raise a *Batson* challenge. The record below permits the conclusion that Webbe and Townsley may have been the victims of a discriminatory use of peremptory challenges because of their association with the two black defendants.

I conclude, therefore, that Webbe and Townsley have standing to join in Gandy's *Batson* challenge, and would remand the case to the district court for further proceedings.

Because the panel in this case granted relief to Townsley and Webbe under *Batson's* equal protection analysis, it was unnecessary to consider whether the appellants were entitled to relief under the sixth amendment.[3] Although appellants did not brief the sixth amendment argument in their initial appellate brief, they did object at trial to the composition of the jury on both fifth and sixth amendment grounds. Transcript, Vol. 4 p. 34. Further, in ordering en banc consideration the court did not limit its review to the standing of a white defendant based on equal protection.[4] Thus, in their briefs to the en banc court, both parties raise the question of relief under the sixth amendment. We are not without precedent for considering alternative constitutional grounds for relief. *See Batson*, 476 U.S. at 112, 106 S.Ct. at 1731 (Burger, C.J., dissenting). Accordingly, even if Townsley and Webbe lack standing to raise an equal protection challenge to the prosecutor's use of peremptory strikes, I believe they are entitled to relief under the sixth amendment.

The sixth amendment guarantees that the venire from which the petit jury is drawn in a criminal case represents a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 537, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). There is no requirement that the actual jury selected must mirror the community. *Id.* at 538, 95

---

**3.** The sixth amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI.

**4.** The court ordered en banc hearing on the following issue:

Whether white defendants who are tried jointly with a black codefendant have standing to challenge the alleged improper use of peremptory challenges by the prosecution to strike black persons from the petit jury.

S.Ct. at 701–02. However, the venire must be so comprised as to allow the possibility that the actual petit jury selected represents a fair cross section of the community. Therefore, the prosecutor's use of peremptory challenges along racial lines to eliminate even this possibility violates the requirements of the sixth amendment. *Booker v. Jabe*, 775 F.2d 762, 772 (6th Cir.1985), *vacated*, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed. 705 (1986), *reinstated*, 801 F.2d 871 (6th Cir.1986), 479 U.S. 1046, *cert. denied*, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Roman v. Abrams*, 822 F.2d 214, 226 (2d Cir.1987) ("The bottom line ... is that the Sixth Amendment guarantees only the *possibility* of a petit jury reflecting a cross section of the community and forbids the prosecutor to exercise his peremptories discriminatorily in a manner that eliminates that possibility.") (emphasis added), *petition for certiorari filed* (Dec. 12, 1987); *Fields v. People*, 732 P.2d 1145, 1151 (Colo. 1987); *see* Polelle & Hourihane, *In Batson's Wake*, Barrister 53, 54 (Summer 1988).

In *United States v. Childress*, 715 F.2d 1313 (8th Cir.1983) (en banc), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984), this court decided that in order to successfully challenge the prosecutor's peremptory strikes under the sixth amendment, the defendant must demonstrate systematic exclusion beyond the confines of the immediate case. *Id.* at 1320. This conclusion was based on the Supreme Court's decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *Swain* has now been overruled to the extent it is contrary to the principles expressed in *Batson*. *Batson*, 476 U.S. at 100 n. 25, 106 S.Ct. at 1725 n. 25. *Batson* recognized that the facts of a single case can demonstrate purposeful racial discrimination and repudiated *Swain's* result that " 'several must suffer discrimination' before one could object." *Id.* at 95–96, 106 S.Ct. at 1722 (quoting *McCray v. New York*, 461 U.S. 961, 965 (1983) (Marshall, J.,

dissenting from denial of certiorari)). *Batson* also entitled defendants to rely on the fact that peremptory challenges allow those to discriminate who are of a mind to discriminate. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23.[5] No principled reason exists for this court to adhere to its opinion in *Childress*. Following the demise of *Swain*, I would grant appellants Townsley and Webbe standing to join in Gandy's challenge to the prosecutor's use of peremptory challenges under the sixth amendment. I dissent.

---

5. This court has repeatedly noted the disturbing number of cases raising the issue of the government's use of peremptory challenges to strike blacks from petit juries in the Eastern District of Missouri. *United States v. Norton*, 780 F.2d 21, 23 n. 3 (8th Cir.1985). Perhaps it is time the majority opened its "watchful" eye. *Id.*